### BancOhio National Bank
### v.
### Quito
*[Cite as 4 AOA 115]*

Case No. 1527
Ross County, (4th)
Decided June 22, 1990

*Ward, Kellenberger, Nusbaum & Whissler, Mr. Scott W. Nusbaum, Chillicothe, Ohio, for Appellant.*

*Moore, Corzine & Bunch Co., L.P.A.. Mr. William J. Corzine III, Chillicothe, Ohio, for Appellee.*

STEPHENSON, J.
This is an appeal from a judgment entered by the Chillicothe Municipal Court following a bench trial granting a motion to dismiss filed by Joana Quito, defendant below and appellee herein. BancOhio National Bank, plaintiff below and appellant herein, appeals and assigns the following error:
"THE TRIAL COURT ERRED IN RULING THAT SECTIONS 1317.12 AND 1317.16 O.R.C. GOVERN APPELLANT IN THE REPOSSESSION OF APPELLEE'S SECURED MOTOR VEHICLE."
On October 18, 1985, appellee purchased a Ford Aerostar and a Ford Escort from Chillicothe Ford, Inc. The purchase price of the Aerostar was $19,500.27 and financing for the vehicle was arranged through appellant with Chillicothe Ford, Inc. acting as appellant's agent. Appellee signed a promissory note on that same day. Appellee failed to make the February 1986 payment for the Aerostar and went into default on the loan on

March 2, 1986. The Aerostar was repossessed by appellant on March 28, 1986, when appellee voluntarily relinquished possession.

A notice dated April 1, 1986 was apparently sent ot appellee via certified mail. The notice informed appellee that she was in default, that she could cure the default, and that the Aerostar would be sold on May 8, 1986 if she failed to cure the default. The van was subsequently sold for $12,900 on May 8, 1986.

Appellant filed a complaint on January 22, 1987, wherein it sought the difference between what appellee owed and what was obtained at the sale. Appellee answered denying liability. The case went to trial on May 18, 1988. At trial, appellee testified that she did not remember receiving the notice. Further, appellant never received a return receipt for the notice and presented no evidence as to when the notice was sent. After hearing all of the testimony, the court found that the transaction was a retail installment sale under R.C. Chapter 1317 and specifically determined that appellant did not "prove by a preponderance of the evidence that the repossession sale notice called for by Section 1317.12 of the Ohio Revised Code, was sent within the required five day period." Because the court below found that appellant had not provided notice within five days after repossessing the car, it held that appellant not entitled to a deficiency judgment.

In its sole assignment of error, appellant asserts that the court below erred in ruling that R.C. 1317.12 and R.C. 1317.16 applied in the case at bar. Because we agree that appellant was exempt from those notice provisions of the Retail Installment Sales Act, we reverse.

R.C. 1317.12 only requires sending default notice "if *collateral for a consumer transaction* is taken possession of by the secured party on default . . . ." (Emphasis added.) Further, R.C. 1 317.16, which allows a secured party to dispose of collateral, requires notice only when a secured party takes a security interest pursuant to R.C. 1317.071, which reads, in pertinent part, as follows:

"No retail seller, in connection with a retail installment contract *arising out of a consumer transaction,* shall take any security interest other than as authorized by this section." (Emphasis added.)

Manifestly, the two provisions in question are only applicable where a consumer transaction is involved. "Consumer transaction" is defined by R.C. 1317.01(P) as follows:

"'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible, *except those transactions between persons, defined in Sections 4905.03 and 5725.01 of the Revised Code, and their customers,* or between attorneys or physicians and their clients or patients, to an individual for purposes that are primarily personal, family, or household." (Emphasis added.)

Included in R.C. 5725.01 is "financial institutions" which is defined as "every person who keeps an office or other place of business in this state and engages in the business of receiving deposits, lending money and buying or selling bullion bills of exchange, notes, bonds, stocks or other evidences of indebtedness with a view to profit . . . ." R.C. 1.59 defines "person" to include "an individual, corporation, business trust, estate, trust, partnership, and association." Clearly, appellant is a "financial institution" as defined by R.C. 5725.01. Furthermore, we note that since appellee signed a promissory note wherein she agreed to pay to appellant the amount it loaned for the car, appellant was a customer of appellant. See *The To National Bank v. Elkins* (October 15, 1987), Franklin Co. App. No. 87AP-504, unreported. Accordingly, since the transaction between the parties herein involved a financial institution and its customer, it was not "a consumer transaction" and was therefore exempt from requirements of R.C. 1317.12 and R.C. 1317.16.[1]

We further note that, as stated above, R.C. 1317.16 only applies to secured parties pursuant to R.C. 1317.071 which in turn applies to "retail sellers." A retail seller is a "seller who is a party to a retail installment sale." R.C. 1317.01(I). A "seller" is then defined by R.C. 1317.01(H) as "a person who sells or agrees to sell goods." It is manifest that appellant is not a seller of goods but a lender.

We finally note one other argument which appellee might raise. The Retail Installment Sales Act was amended in 1980, and R.C. 1317.01(Q) was added and reads as follows:

"'Purchase money loan' means a cash advance that is received by a consumer from a creditor in return for a finance charge within the meaning of the 'Truth in Lending Act.' 82 Stat. 146 (1968), 15 U.S.C. 1601 and regulation Z thereunder, which is applied in whole or substantial part to a consumer transaction with a seller, who either:

"(1) Cooperates with the creditor to channel consumers to the creditor on a continuing basis;

"(2) Is affiliated with the creditor by common control, contract, or business arrangement."

If a credit card issued by a bank or a building and loan association is used by a consumer in a particular consumer transaction, the bank or building and loan association is not a creditor, within the meaning of this division, with respect to the particular consumer transaction."

It is arguable that the loan in the case at bar falls within the definition of "purchase money loan." However, the term " purchase money loan" only appears in two sections of the Retail Installment Sales Act, to wit: "R.C. 1317.031 and R.C. 1317.032." Both those sections concern defenses by a buyer against a holder in due course. Potentially, "purchase money loans" are also encompassed in R.C. 1317.14 which uses the language, "or in any other agreement." There is no indication that the General Assembly intended all sections of the Retail Installment Sales Act to apply to "purchase money loans." Therefore, even if the loan in the case at bar falls within the definition of "purchase money loans," supra, we must assume that the General Assembly did not intend the notice provisions of R.C. 1317.12 and R.C. 1317.16 apply to that loan since those sections do not refer to "purchase money loans."

Because the notice provisions do not apply to the transaction in the case at bar, we hold that the lower court erred in dismissing appellant's complaint. Our holding in the case sub judice is consistent with the holdings of other courts which have been faced with the same issue. See *The Huntington National Bank v. Elkins,* supra; *Blon v. Bank One, Akron, N.A.* (October 29, 198

6), Summit Co. App. No. 12580, unreported, r'ved on other grounds in 35 Ohio St. 3d 93; *Euclid National Bank v. Hodge* (December 12, 1985), Cuyahoga Co. App. No. 49705, unreported; *Lake National Bank v. Galliher* (October 22, 1982), Lake Co. App. No. 0-055, unreported. We further note that while the Ohio Supreme Court has not directly been faced with the issue in the case at bar, the Court did, in dicta, state that such a transaction is excepted from the Retail I nstallment Sales Act. See *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St. 3d 93, at footnote 4. Accordingly, the judgment of the lower court is reversed and the caused remanded for proceedings consistent with this opinion.[2]

*Judgment reversed.*

ABELE, P.J., and HARSHA, J., concur.

---

[1] It is emphasized that we are not holding that the facts presented did not constitute a "consumer transaction." It is apparent that appelle's dealings with Chillicothe Ford, Inc. did constitute a "consumer transaction." Thus, our holding is confined to the transaction between appellant and appellee.

[2] This court in a prior case, to wit, *Citizens National Bank v. Stewart* (October 29, 1985), Ross Co. App. No. 1182, unreported, in affirming the trial court held that the bank had complied with the notice provisions in R C. 1317.12 and 1317.16 and, thus, arguably held implicitly that the notice provisions were applicable. However, that case is distinguishable in that for the purpose of the appeal, this court assumed that the notice provisions were applicable. Because we held that the notice provisions were in any event satisfied, it was unnecessary to consider whether or not the notice provisions were applicable.